## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

LARRY KLAYMAN, et. al.,

                Appellees-Cross-Appellants,

v.

BARACK HUSSEIN OBAMA, et. al.

                Appellants-Cross-Appellees.

Nos: 14-5004, 14-5005, 14-5016, 14-5017

## APPELLEES'/APPELLANTS' MOTION TO STRIKE AND FOR SANCTIONS

Appellees/Appellants, Larry Klayman, Charles and Mary Ann Strange, Matthew Garrison and Michael Ferrari hereby move that this honorable Court to strike Appellants'/Appellees' Unopposed Motion to Consolidate Cases and Set a Briefing Schedule, and for Leave to File Out of Time ("Unopposed Motion") and impose the appropriate sanctions on the Government Appellants/Appellees and their counsel for misleading Appellees'/Appellants' counsel and this Court, as well as abusing and misusing Court process.

On April 11, 2014, Attorney for the Civil Division, U.S. Department of Justice, Henry C. Whitaker, sent Appellees'/Appellants' counsel an email requesting consent to a motion that "will ask the Court to consolidate the pending

appeals and to set a single briefing schedule for both sets of appeals. Because this is a procedural motion, and because the deadline for filing procedural motions has passed, we will also be asking the Court for leave to file this motion out of time." Exhibit 1. Appellants'/Appellees' counsel also informed Appellees'/Appellants' counsel that "the government will be filing a motion today informing the D.C. Circuit that the government has decided not to file a dispositive motion." Exhibit 1.

Instead of filing a motion containing what Appellees'/Appellants' counsel were told that the Appellants/Appellees sought – a briefing schedule and a consolidation of the pending appeals – Appellants'/Appellees' counsel, on behalf of the Government Appellants/Appellees, filed a distorted, dishonest and blatant misrepresentation of what Appellees'/Appellants' counsel consented to and put forth a brief on the merits of the case. Accordingly, Appellees/Appellants did not consent as falsely represented to this Court. Instead, Appellants'/Appellees' Unopposed Motion was, in substance, their dispositive motion, despite Appellants'/Appellees' representing to the Court that "we have concluded that such a dispositive motion is not necessary in the circumstances of this appeal." Unopposed Motion at 1. This dispositive motion was cleverly but dishonestly filed for one reason only: to try to influence this Court and prejudice Appellees/Appellants. For the following reasons, Appellees/Appellants thus move

this Court to strike Appellants'/Appellees "unopposed" motion and impose the

appropriate sanctions on the Government Appellants/Appellees and their counsel.

By way of guidance, the Federal Rules of Civil Procedure ("FRCP")

provide:

> . . . [a] court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.

Fed. R. Civ. P. 12(f). Appellants'/Appellees' Unopposed Motion misleads this

Court with an insufficient defense by claiming that since the President "order[ed] a

transition" to the current program to "establish a new mechanism that preserves the

capabilities we need" it should automatically and without discernment be taken as

true because they are the great and powerful Government – even though the

Appellants/Appellees have a history of lying to Congress, the American people and

the Honorable Richard J. Leon of the U.S. District Court for the District of

Columbia. Unopposed Motion at 3. Appellants/Appellees also mislead this Court

and Appellees/Appellants by introducing immaterial and scandalous matter. It

should be striken for several compelling reasons.

First, Appellants'/Appellees' Unopposed Motion is procedurally improper.

Appellees'/Appellants' counsel consented only to a briefing schedule and a

consolidation of cases – not a frivolous rendition of the Government's best attempt

at a defense; that is, that the program is not the same as it was on December 16, 2013 and therefore Judge Leon's ruling that their illegal conduct is almost-Orwellian and likely a violation of the Fourth Amendment is no longer applicable and in effect.

Second, Appellants'/Appellees' argument is legally and factually false. It misleads and fails for two fundamental reasons: (1) the law regarding the bulk collection of telephone and Internet metadata has not changed just because President Obama says it has (more precisely, because the President and his appointed Government officials propose changes does not prevent this Court from reaching the merits of the constitutionality of their past and present illegal activities) and (2) even if the law did change, which it has not, it has no bearing on this Court to affirm the Honorable Richard J. Leon's preliminary injunction of December 16, 2013. Whether the program exists in its same state today as it did December 16, 2013 is irrelevant; the damage has been done. *See Friends of the Earth v. Laidlaw Envt'l Services, Inc.*, 528 U.S. 167 (2000)[1].

Appellants/Appellees falsely claim that "whether the district court's preliminary injunction against the prospective operation of a government program remains valid depends on governing law and the facts as they now exist, not as

---

[1] In any event, Appellees/Appellants do not know what is in the allegedly new and revised Foreign Intelligence Surveillance Court ("FISC") order, since it remains classified.

they existed when the district court considered the question in December 2013."
Unopposed Motion at 6. Appellants/Appellees are mistaken.

The Supreme Court has stated "[i]t is well settled that a 'defendant's
voluntary cessation of a challenged practice does not deprive a federal court of its
power to determine the legality of the practice' for 'if it did, the courts would be
compelled to leave [t]he defendant . . . free to return to his old ways.'" *Friends of
the Earth v. Laidlaw Envt'l Services, Inc.*, 528 U.S. 167, 189 (2000) (quoting *City
of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)); *see United States
v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953) (holding that "voluntary cessation of
allegedly illegal conduct does not deprive the tribunal the power to hear and
determine the case"). Precisely because the voluntary cessation of allegedly
wrongful activity can be undone by an equally voluntary decision to resume the
conduct, courts have consistently held that "[t]he heavy burden of persua[ding] the
court that the challenged conduct cannot reasonably be expected to start up again
lies with the party asserting [that the activity ceased]." *United States v.
Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968).

Here, it is more than a stretch to claim that Government
Appellants/Appellees and their officials who did not follow the law before will
suddenly grow a conscience and follow it now – especially since they refuse to
acknowledge that their previous course of conduct was wrongful, unconstitutional

and consisted of repeatedly making false statements before Congress, the Foreign

Intelligence Surveillance Court ("FISC") and the district court.

More to the point, Appellants/Appellees have a history of lying to the district

court, Congress and the American people, culminating with the recent letter of

James Clapper, where he was forced to admit that the NSA reads innocent

American's emails and text messages and listens to digital recordings of their

telephone conversations without warrants. Tellingly, Clapper, retired head of the

NSA General Keith Alexander, and even President Obama have steadfastly denied

these activities in public and on the court record.[2] Indeed, the Appellants/Appellees

play a shell-game, whereby they falsely represent that they ceased accessing

Internet metadata and other data through Section 215 in 2011, when it is now

apparent based on Clapper's forced admissions that they simply moved this

unconstitutional metadata collection violation of the Fourth, First and Fifth

Amendment rights over to their continuing PRISM program under Section 702.

See Exhibit 2. The Appellants/Appellees simply cannot be believed.

In addition to the legally spurious arguments Appellants/Appellees set forth

in their Unopposed Motion, the motion itself is filed in bad faith and is vexatious.

---

[2] "Nobody is listening to the content of your phone calls . . . with respect to
Internet, this [program] does not apply to U.S. citizens and does not apply to
people living in the United States." *See*
http://abcnews.go.com/Politics/video/obama-nsa-controversy-listening-phone-calls-19349423.

First, Appellants/Appellees asked for an eight-week extension on February 21, 2014 to file dispositive motions. This Court gave Appellants/Appellees until April 11, 2014. The motions would have otherwise been due February 27, 2014. They then let the time run and at the last moment attempt to trick this Court in believing that they do not want to file dispositive motions but essentially file one anyway. This charade cost this Court and the parties about six weeks of delay. The Appellants/Appellees motion had little to do with a reschedule and consolidation of cases. It was simply another delay tactic to thwart a swift adjudication of the Fourth Amendment constitutional issues which they have been warned not to do. As Judge Leon warned the Government Appellants/Appellees:

> "We work 24/7 around this courthouse, my friend. 24/7. I don't want to hear anything about vacations, weddings, days off. Forget about it. This is a case at the pinnacle of public national interest, pinnacle. All hands 24/7. No excuses.

Tr. of Status Conference on October 31, 2013 at 7. In his Memorandum Opinion of December 16, 2013, Judge Leon also warned, "I fully expect that during the appellate process . . . the Government will take whatever steps necessary to prepare itself to comply with this order when, and if, it is upheld. Suffice it to say, requesting further time to comply with this order months from now will not be well received and could result in collateral sanctions." Judge Leon's Memorandum Opinion of December 16, 2013 at pgs. 67-68. This recently filed motion is yet another strategic delay tactic that the Appellants/Appellees have used throughout

7

this litigation. They are intentionally trifling with Court process because they believe they can get away with it.

Consistent with a court's inherent authority to strike matters from the record, a court also has the inherent power to impose sanctions and assess attorneys' fees and costs. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991). They flow from the nature of the judicial institution itself – powers that "are necessary to the exercise of all others." *United States v. Hudson*, 7 Cranch 32, 24 L. Ed. 259 (1812). Inherent powers include the power to issue contempt sanctions; the power to impose obedience, respect and decorum, and submission to lawful court mandates; and – most significantly for present purposes – the "'well-acknowledged' inherent power of a court to levy sanctions in response to abusive litigation practices." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980).

The Circuit Rules of the U.S. Court of Appeals for the District of Columbia Circuit provide:

> When any party to a proceeding before this court or any attorney practicing before the court fails to comply with the FRAP, these rules, or an order of this court, or takes an appeal or files a petition or motion that is frivolous or interposed for an improper purpose, such as to harass or to cause unnecessary delay, the court may, on its own motion, or on motion of a party, impose appropriate sanctions on the offending party, the attorney, or both. Sanctions include dismissal for failure to prosecute; imposition of costs, expenses, and attorney's fees; and disciplinary proceedings.

D.C. Cir. Rule 38. In *Chambers*, the Supreme Court found that federal judges have the judicial power necessary to manage their own proceedings and to control the conduct of those who appear before them, including the inherent power to punish abuses of the judicial process. *Chambers,* 501 U.S. 32 at 42-45. Specifically, the Court found "[u]nder its inherent authority, the Court has broad discretion in the types of sanctions imposed, including attorney's fees and costs, disciplining the attorney, giving a warning of default or dismissal, and a fine payable to the Court. The purpose of a fee award is to compensate the innocent party, vindicate an affront to the Court, and to ensure abuses are not repeated."[3] *Id*. at 56-57.

It is crystal-clear that Appellants/Appellees filed a motion that is frivolous and interposed for an improper purpose; that is to prejudice Appellees/Appellants and cause yet again an unnecessary delay by providing this Court with false information that the illegal spy program has been now updated.

---

[3] Importantly, while bad-faith misconduct can be dealt with under the Federal Rules of Civil Procedure, "if in the informed discretion of the court, neither statute nor the rules are up to the task, the court may safely rely on its inherent power. *Id*. at 50. *See also Link v. Wabash Railroad Co.*, 370 U.S. 626, 633 (1962) (nothing that the courts have an inherent role in sanctioning contumacious parties); *Anderson v. Dunn*, 19 U.S. 204, 227 (1821) (courts possess "the power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates" through the contempt power); *Shilltani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."); *Ex parte Robinson*, 86 U.S. 505, 510 (1874) ("The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts, and consequently to the due administration of justice.").

It is not the first time Appellees/Appellants have flouted court process. Indeed, they have lied repeatedly to the district court, Congress and the American people and there are numerous instances of this unlawful conduct. Their unlawful acts include but are not limited to misleading courts, presenting inaccurate statements in court filings, making false representations, and exceeding the bounds of the surveillance as set forth in court orders. *See* Nicole Perlott, Jeff Larson, and Scott Shane, *"N.S.A. Able to Foil Basic Safeguards of Privacy on Web,"* The New York Times (Sept. 5, 2013) http://www.nytimes.com/2013/09/06/us/nsa-foils-much-internet-encryption.html. Deeply troubling are the number of misleading statements senior officials have made about domestic surveillance and the extent of Appellants'/Appellees' false misrepresentations and blatant lies. The National Intelligence Director, James Clapper, testified before Congress last year that the NSA does not collect data on millions of Americans, which he now admits is a "clearly erroneous" lie. Sen. Ron Wyden asked Clapper during a hearing in March of 2013 if the NSA gathered "any type at all on millions or hundreds of millions of Americans."[4] Clapper initially answered definitely: "No." When pressed by Widen, Clapper changed his answer. "Not wittingly," he said. "There are cases where they could inadvertently perhaps collect, but not wittingly." Nothing could be further

---

[4] *See, "Clapper apologizes for 'erroneous' answer on NSA."* http://news.yahoo.com/clapper-apologizes-erroneous-answer-nsa-221238030.html (summarizing Clapper's misleading statements to Congress on the extent of U.S. surveillance on U.S. Citizens).

from the truth, as evidenced by the public disclosures of a highly classified

"Verizon Order" in addition to Clapper subsequently apologizing for his clearly

erroneous and untruthful answer.

In March 2009, the FISC learned that NSA analysts were using the phone

log database in ways that went beyond what the judges believed to be the practice

because of the NSA's repeated misrepresentations in court filings. In 2011, Judge

John D. Bates, then serving as chief judge on the FISC, admonished the NSA for

repeatedly violating the requirements and limitations set forth by Court Orders,

privacy laws, and the U.S. Constitution. As Judge Bates emphasized, "Contrary to

the government's repeated assurances, N.S.A. has been routinely running queries

of the metadata using querying terms that did not meet the standard for querying,"

and that this requirement had been "so frequently and systematically violated that

it can fairly be said that this critical element of the overall . . . regime has never

functioned effectively." Charlie Savage and Scott Shane, *"Secret Court Rebuked*

*N.S.A. on Surveillance,"* The New York Times, (Aug. 21, 2013).

http://www.nytimes.com/2013/08/22/us/2011-ruling-found-an-nsa-program-

unconstitutional.html?r=0. Judge Bates further emphasized the NSA's unlawful

conduct and egregious and illicit surveillance tactics, by stating:

> The Court is troubled that the government's revelations regarding
> NSA's acquisition of Internet transactions mark the third instance in
> less than three years in which the government has disclosed a
> substantial misrepresentation regarding the scope of a major collection

program. In March, 2009, the Court concluded that it s authorization
of NSA's bulk acquisition of telephone call detail records from
[redacted] in the so-called "big business records" matter "ha[d] been
premised on a flawed depiction of how the NSA uses [the acquired]
metadata," and that "[t]his misperception by the FISC existed from
the inception of its authorized collection in May 2006, buttressed by
repeated inaccurate statements made in the government's submissions
. . .

Memorandum Opinion, *In re Government's Ex Parte Submission of
Reauthorization Certification and Related Procedures, Ex Parte Submission of
Amended Certifications, and Request for an Order Approving Such Certification
and Amended Certification* (FISC Ct. Oct. 3. 2013) at fn. 14.

Appellants/Appellees have continuously engaged in a pattern of non-
compliance with respect to the NSA's handling of produced information, as
demonstrated through publicly released FISC orders addressing the NSA's
surveillance and requests for production of information. In her Amended
Memorandum Opinion, dated August 29, 2013, the Honorable Claire V. Eagan
recognized and acknowledged Appellants/Appellees repeated lack of adherence to
minimization procedures implicit in the authorization to compel production of the
documents, stating, "[T]he Court is aware that in prior years there have been
incidents of non-compliance with respect to NSA's handling of produced
information." Amended Memorandum Opinion, *In Re Application of the Federal
Bureau of Investigation For An Order Requiring the Production Of Tangible
Things From [Redacted],* (FISC Ct. Aug. 29, 2013) at n.9.

Similarly, in an order issued by the FISC on March 2, 2013, questioning the
credibility, trustworthiness, and ability for Appellants/Appellees to fully comply

with court orders, the Honorable Reggie B. Walton stated, "[I]n light of the scale of this bulk [telephone records] collection program, the Court must rely heavily on the government to monitor this program to ensure that it continues to be justified . . . and that it is being implemented in a manner that protects the privacy interests of U.S. persons as required by applicable minimization procedures. To approve such a program, the Court must have every confidence that the government is doing its utmost to ensure that those responsible for implementation fully comply with the Court's orders. **The Court no longer has such confidence**." [emphasis added] *In Re Production of Tangible Things [Redacted]*, Dkt. No: BR. 08-13 (FISA Ct. March 2, 2009).

Alarmingly, it has recently been discovered that lower officials have been blatantly misusing the NSA's surveillance power to spy on their love interests. NSA Inspector General George Ellard admitted that since 2003, there have been "12 substantiated instances of intentional misuse" of "surveillance authorities." About all of these cases involved an NSA employee spying on a girlfriend, boyfriend, or some kind of love interests. Jake Gibson, *"Too tempting? NSA watchdog details how officials spied on love interests,"* Fox News, (Sept. 27, 2013). http://www.foxnews.com/politics/2013/09/27/too-tempting-nsa-details-how-officials-spied-on-love-interests. More concerning, if lower level employees

13

are capable of such misuse of the agency's surveillance power, then imagine what the higher officials are capable of, with access to such surveillance programs.[5]

For these compelling reasons, this Court should respectfully strike Appellants/Appellees Unopposed Motion as it was an improper method to try to prejudice this Court, after having already delayed these appeals for six weeks. In addition, the Appellants'/Appellees' counsel made misrepresentations to opposing counsel when he sought consent to file their motion, which had little to do with consolidation and a briefing schedule, but instead was simply a tactical subterfuge. Because of the inherent authority of this Court, both Appellants'/Appellees' themselves and their counsel should be appropriately sanctioned by having Appellants/Appellees pay attorneys' fees and costs of the Appellees/Appellants in having to prepare and file this motion.

Appellants/Appellees oppose this motion.

Dated: April 22, 2014

Respectfully submitted,

---

[5] Notably, further evidencing the agency's surveillance power and its misuse is the fact that the NSA monitored the phone calls of 35 world leaders, including Germany's Chancellor Angela Merkel's phone, which has led to the "worst spat between the two countries in a decade." "*NSA Monitored Phone Calls of 35 World Leaders*," The Huffington Post (Oct. 24, 2013) http://www.huffingtonpost.com/2013/10/24/nsa-world-leaders_n_4158922.html. Such surveillance has also involved France, Mexico, and Brazil, as well as other countries. "*Report says NSA monitored 35 world leaders, on heel of Merkel spying claim,*" Fox News (Oct. 25, 2013).

  /s/ *Larry Klayman*       
Larry Klayman, Esq.
General Counsel
Freedom Watch, Inc.
D.C. Bar No. 334581
2020 Pennsylvania Ave. NW, Ste 345
Washington, DC 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 22, 2014, I electronically filed the foregoing with the Clerk of the Court by using the appellate CM/ECF system.

I certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Respectfully Submitted,


 /s/ *Larry Klayman*
Larry Klayman, Esq.
D.C. Bar No. 334581
2020 Pennsylvania Ave. NW #345
Washington, DC 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com

# Exhibit 1



Dina James <daj142182@gmail.com>

# Fwd: Klayman appeals--motion to consolidate

1 message

**Larry Klayman** <leklayman@gmail.com>
To: Dina James <daj142182@gmail.com>

Wed, Apr 16, 2014 at 2:49 PM

---------- Forwarded message ----------
From: **Whitaker, Henry (CIV)** <Henry.Whitaker@usdoj.gov>
Date: Fri, Apr 11, 2014 at 11:08 AM
Subject: Klayman appeals--motion to consolidate
To: "leklayman@gmail.com" <leklayman@gmail.com>
Cc: "Byron, H. Thomas (CIV)" <H.Thomas.Byron@usdoj.gov>

Mr. Klayman:

The government will be filing a motion today informing the D.C. Circuit that the government has decided not to file a dispositive motion.  That motion will ask the Court to consolidate the pending appeals and to set a single briefing schedule for both sets of appeals.  Because this is a procedural motion, and because the deadline for filing procedural motions has passed, we will also be asking the Court for leave to file this motion out of time.

We'd appreciate knowing your clients' position on the motion so we can represent to the Court whether the motion is opposed.

Thanks very much,

Henry

Henry C. Whitaker

Attorney, Appellate Staff

Civil Division, U.S. Department of Justice

950 Pennsylvania Ave. NW Room 7256

Washington, D.C. 20530

(202) 514-3180 (phone)

(202) 514-8151 (fax)

# Exhibit 2

DIRECTOR OF NATIONAL INTELLIGENCE
WASHINGTON, DC 20511

MAR 2 8 2014

The Honorable Ron Wyden
United States Senate
Washington, DC 20510

Dear Senator Wyden:

During the January 29, 2014, Worldwide Threat hearing, you cited declassified court documents from 2011 indicating that NSA sought and obtained the authority to query information collected under Section 702 of the Foreign Intelligence and Surveillance Act (FISA), using U.S. person identifiers, and asked whether any such queries had been conducted for the communications of specific Americans.

As reflected in the August 2013 Semiannual Assessment of Compliance with Procedures and Guidelines Issued Pursuant to Section 702, which we declassified and released on August 21, 2013, there have been queries, using U.S. person identifiers, of communications lawfully acquired to obtain foreign intelligence by targeting non U.S. persons reasonably believed to be located outside the U.S. pursuant to Section 702 of FISA. These queries were performed pursuant to minimization procedures approved by the FISA Court as consistent with the statute and the Fourth Amendment. As you know, when Congress reauthorized Section 702, the proposal to restrict such queries was specifically raised and ultimately not adopted.

For further assistance, please do not hesitate to contact Deirdre M. Walsh in the Office of Legislative Affairs, at (703) 275-2474.

Sincerely,

James R. Clapper